IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 08-00625 JMS |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION TO SUPPRESS |
| vs. | ) | |
| | ) | |
| BRANDON KAWIKA HINSEY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

The Indictment charges Defendant Brandon Kawika Hinsey

("Defendant") with knowingly and intentionally possessing with intent to

distribute fifty grams or more of methamphetamine, its salts, isomers, and salts of

its isomers in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) on or about

October 8, 2008.  On April 24, 2009, Defendant filed a Motion to Suppress all

evidence obtained as a result of the October 8, 2008 search of his backpack during

a traffic stop and all evidence obtained in connection with the subsequent search

warrants.  On July 13, 2009, the court received oral testimony from Drug

Enforcement Administration ("DEA") Special Agent Brian Hunt ("Agent Hunt"),

Hawaii County Police Department ("HCPD") Officer Ed Buyten ("Officer

Buyten"), and HCPD Officer Tyler Procopec ("Officer Procopec").  After

reviewing the Motion, the supporting and opposing memoranda, the testimony of

the witnesses, and the arguments of counsel, the court DENIES Defendant's

Motion to Suppress.

## BACKGROUND

The court provides the following recitation of the relevant events

based on the testimony and evidence presented.[1]

### A.    Officers' Observations at the Kona Airport

On October 8, 2008, Agent Hunt and Officer Buyten were at the Kona

airport looking for an individual traveling with a large amount of money from

Kona to Los Angeles on United Airlines flight 56.  The officers were positioned so

that they could see the outbound passengers heading through security as well as the

incoming passengers leaving through the secure area.  *See* Pl.'s Ex. 1 (showing

officers' vantage point).  The officers saw Defendant, who was dressed in civilian

clothing and carrying a black backpack, exit from the secure area and then walk

past them.[2]

---

[1]  At the hearing and upon the parties' stipulation, the court admitted all exhibits
submitted by the parties (*i.e.*, Plaintiff's Exhibits A-F and Defendant's Exhibits 1-5).  The court
also took judicial notice of Plaintiff's Attachment 1, which contains sections of the Hawaii
County Traffic Code, and the parties stipulated to the fact that Hawaii Revised Statutes § 291-3
was repealed in 1971.

[2]  Agent Hunt was aware of Defendant from past surveillance and information from
informants claiming that he was involved with the methamphetamine trade on the Big Island.

(continued...)

The officers followed Defendant and observed him walk behind a United Airlines counter, use an Airport Operations Area entry card to enter a secured door, and shortly thereafter exit the secured door and proceed away from the United Airlines counter.  *See* Pl.'s Ex. 2 (showing United Airlines counter); *see also* Def.'s Ex. A ¶ 6.  As Defendant walked, he opened a business envelope, read its contents, and put it in his backpack.  Defendant never went to baggage claim and instead went to an area to smoke.  A short time later, two individuals met Defendant and the three then walked to the parking area, entered a white pickup truck, and departed the area.  *See id.* ¶ 7.

## B.    The Traffic Stop

Officer Buyten observed that the tail lamps of the truck were partially obscured by dark-tinted covers over the taillight apparatus resulting in only the tail lamps' upper red reflector and half of the lower red reflector being visible.  *See* Pl.'s Ex. 3.  Due to these tinted covers, Officer Buyten observed that it was difficult to see the brake lights in daylight from a close distance.  Officer Buyten

---

[2](...continued)
The officers testified that they decided to follow Defendant given this information, as well as because they saw what they believed was an unnatural bulge in Defendant's groin and that it appeared he had just completed a short turn-around trip to the mainland.  Because, as discussed below, the court finds that the officers had probable cause to stop the pickup truck in which Defendant was a passenger for a traffic violation, the court does not address whether in the alternative, the officers had reasonable suspicion to stop the truck to make an investigative detention of Defendant.  *See* Pl.'s Opp'n 21.

testified that he did not believe that these lights complied with Hawaii County

Traffic Code ("HCTC") § 24-37, which provides:

> **Section 24-37.      Tail lamp requirements**.
> (a) Every motor vehicle . . . shall be equipped with at
> least one tail lamp mounted on the rear, which, when
> lighted as required in section 24-35, shall emit a red light
> plainly visible from a distance of one thousand feet to the
> rear. . . .
> (b) Every above-mentioned vehicle, other than a truck
> tractor, shall be equipped with at least two tail lamps
> mounted on the rear, . . . which, when lighted as required,
> shall comply with the provisions of this section.

*See* Pl.'s Attach. 1.

Agent Hunt and Officer Buyten requested for a patrol car to make the

stop because Officer Buyten was in plainclothes and did not have a traffic citation

book.  Due to delays in getting a patrol car on the scene, however, Agent Hunt and

Officer Buyten stopped the truck.  After Agent Hunt and Officer Buyten separated

the three occupants of the truck, Agent Hunt questioned the driver, Marlon

Geovani Ramirez-Guerra ("Ramirez-Guerra"), who said that he knew Defendant

from playing pool and that Defendant had asked for a ride from the airport.

Ramirez-Guerra further admitted that he had only a Guatamalan driver's license

and was an illegal alien.  *See also* Def.'s Ex. A ¶ 8.

In the meantime, Officer Buyten approached Defendant, who was in

the front passenger seat with a black backpack by his feet, and asked him to exit

the vehicle.  Officer Buyten asked Defendant who the backpack belonged to, and in response Defendant indicated that it belonged to Ramirez-Guerra, and not himself.  Agent Hunt then approached Defendant, who consented to speaking with him.  Agent Hunt also saw the backpack on the floor of the front passenger area where Defendant had previously been sitting and asked if the backpack was Defendant's.  Defendant responded "no," and then stated that it belonged to the driver while pointing to Ramirez-Guerra.  Ramirez-Guerra and the other occupant Tulio Garcia Oseida ("Oseida"), however, replied that the backpack belonged to Defendant.  *Id.*

Agent Hunt treated the backpack as abandoned property, opened it, and found a clear plastic baggie containing an estimated one pound of suspected methamphetamine, a business envelop containing a United Airlines check payable to Defendant, and United Airlines boarding passes for Defendant confirming a short turnaround trip to Los Angeles.  *See also* Def.'s Ex. A ¶ 9.  Upon learning of the methamphetamine, Officer Buyten handcuffed Defendant.

At this point, Officer Procopec arrived at the traffic stop in his patrol car, where Officer Buyten told him that they were going to transport Ramirez-Guerra, Oseida, and Defendant to the police station, and that Officer Procopec should issue a citation to Ramirez-Guerra for the defective taillights.  Officer

Buyten did not identify to Officer Procopec the particular provision he believed the truck violated, and Officer Procopec issued two citations to Ramirez-Guerra -- one for not having a driver's license, and the other for a "defective taillight" in violation of "Section 291-3." Pl.'s Ex. 5. The latter citation further provides that "Ofcr Buyten observed tinted covers on rear of veh (taillights) making it difficult to see illumination of taillights @ (+)200 yr." Pl.'s Ex. 5.

Hawaii Revised Statues ("HRS") § 291-3 was repealed in 1971. Officer Procopec testified that he misunderstood Officer Buyten's reference to a "defective taillight" to be a violation of the HRS as opposed to the HCTC, resulting in him citing the incorrect code provision. Officer Procopec testified that he actually intended to cite HRS § 291-31, which requires two red-colored taillights to be displayed not less than two hundred feet (not yards) from the rear at any time while the vehicle is operated on any public highway from thirty minutes after sunset to thirty minutes before sunrise.

## C.    Defendant's Arrest and Post-Arrest Events

Agent Hunt arrested Defendant at 12:30 p.m. and subsequently made arrangements for search warrants for Defendant's residence and vehicle. Specifically, Agent Hunt provided information to DEA Special Agent Gerald Lawson ("Agent Lawson") on Oahu to apply for search warrants from a U.S.

magistrate judge in Honolulu.  *See* Def.'s Ex. D (Application and Affidavit for

Search Warrant).  At 4:20 p.m. that same day, United States Magistrate Judge

Leslie E. Kobayashi issued a warrant to search Defendant's vehicle, Def.'s Ex. F,

and a second warrant to search Defendant's residence for, among other things,

controlled substances, materials relating to the distribution of controlled

substances, and items of personal property which tend to identify the individuals

who occupy the residence.  Def.'s Ex. E.  At approximately at 5:45 p.m., Agent

Hunt searched Defendant's residence and vehicle.  *See* Def.'s Ex. A ¶ 11.

After performing the searches of Defendant's residence and vehicle, at

8:00 p.m. Agent Hunt attempted to interview Defendant.  Defendant declined to be

interviewed and requested an attorney, after which Agent Hunt informed

Defendant that he would be transported for federal processing but needed to know

Ramirez-Guerra and Oseida's involvement with him.  Defendant responded that

they had nothing to do with Defendant and he had simply requested a ride home

from Ramirez-Guerra.  *See* Def.'s Ex. A ¶ 12.

Defendant was subsequently transported to Honolulu on October 9,

2008.  Due to their arrival time, however, Defendant was not taken before a federal

judge for his initial appearance until October 10, 2008.

## ANALYSIS

**A.      Credibility of Agent Hunt, Officer Buyten and Officer Procopec**

At the July 13, 2009 hearing, Agent Hunt, Officer Buyten, and Officer Procopec testified.  The testimony of each of these officers was consistent with one another and was corroborated by the evidence presented.  Given these facts, as well as the court's own observations of each witness, the court finds their testimony credible.

Defendant nonetheless argues that the court should discount Agent Hunt, Officer Buyten, and Officer Procopec's testimony due to alleged discrepancies in the evidence presented as well as purported violations of Defendant's rights.  The court addresses each argument in turn, and finds that none of these arguments changes the court's ultimate determination that the witnesses provided credible testimony.

First, Defendant argues that discrepancies between Agent Hunt's report and Agent Lawson's affidavit show that Agent Hunt attempted to mislead Magistrate Judge Kobayashi into issuing the warrants.  Because Agent Hunt was located on the Big Island, he provided information to Agent Lawson on Oahu to apply for search warrants from a United States magistrate judge in Honolulu. While there are some discrepancies between the two statements -- Agent Hunt's

8

report states that Defendant was questioned outside the truck while Agent

Lawson's affidavit states that Defendant was questioned while he was in the truck,

and Agent Lawson's affidavit fails to mention Oseida -- these differences would

not affect the probable cause determination and are more likely due to transmitting

this information interisland than any intent to deceive the magistrate judge.  The

court therefore does not infer any bad intent on the part of either agent due to these

minor differences between the statements.[3]

Second, Defendant argues that Agent Hunt violated the presentment

rule requiring a federal arrestee to be presented to a magistrate judge without

unnecessary delay.  *See* Def.'s Mot. 28.  Defendant was arrested on October 8,

2008 at 12:30 p.m. during the traffic stop, and it was not until 8:00 p.m. that

evening that Agent Hunt had an opportunity to interview Defendant after obtaining

and executing the search warrants.  Defendant was transported to Honolulu on

October 9, 2009 on an afternoon flight, which Agent Hunt testified was the earliest

---

[3] Defendant further argues that the agents omitted "information from which the magistrate judge would have questioned the propriety of the traffic stop," Def.'s Mot. 27, and also attempted "to obscure the fact that the traffic stop occurred only at the behest of Officer Buyten" even though Officer Procopec issued the citation. *Id.* at 25-26.  To the extent Defendant is arguing that the court should discount the officer's testimony because they used the traffic violation as a pretext to stop the truck, as explained below, the traffic stop was proper because they had probable cause to believe the truck violated HCTC § 24-37.

flight he could secure.[4]  Due to the later arrival in Honolulu on October 9, 2008, Defendant did not appear before a magistrate judge until October 10, 2008.  Given these circumstances, the court finds no unnecessary delay in presenting Defendant to a magistrate judge from which the court could infer improper actions by Agent Hunt.

Third, Defendant argues that when the officers executed the search warrant on Defendant's residence, agents improperly seized his child's immunization record and documents belonging to Charone Hinsey, showing that they made no efforts to abide by the warrant's restrictions.  *See* Def.'s Mot. 30. Contrary to Defendant's argument, the warrant allowed the officers to seize items of personal property which tend to identify the individuals who occupy the residence such that these items were within the scope of the search warrant.  *See* Def.'s Ex. E.

Finally, Defendant argues that the court should discount Agent Hunt's testimony because he violated the safeguards of *Miranda v. Arizona*, 384 U.S. 436 (1966), by failing to Mirandize Defendant until 8:00 p.m. the night of his arrest and asking Defendant questions about his relationship with Ramirez-Guerra and Oseida

---

[4]  Given that the Ironman World Championship was scheduled to begin on October 11, 2008 and Discoverer's Day was October 13, 2008, creating a three-day holiday weekend, the court finds Agent Hunt's testimony that he could not secure an earlier flight credible.

after Defendant invoked his rights to silence and counsel.  *See* Def.'s Mot. 27.

Even if Agent Hunt delayed in Mirandizing Defendant and asked Defendant

questions regarding Ramirez-Guerra and Oseida's involvement after Defendant

invoked his rights to silence and counsel, the court finds that such *Miranda*

violation does not, by itself, warrant finding Agent Hunt's testimony incredible.

Agent Hunt's testimony was corroborated by his report, Def.'s Ex. A, as well as

the testimony of Officer Buyten.[5]  Based on this corroboration as well as the

court's own observation of Agent Hunt's testimony, the court finds that he was a

credible witness.

In sum, the court finds that Agent Hunt, Officer Buyten, and Officer

Procopec provided credible testimony at the July 13, 2009 hearing.

**B.     Merits of Defendant's Motion to Suppress**

Defendant argues that the evidence obtained as a result of the October

8, 2008 search of his backpack and all evidence subsequently obtained from the

execution of the search warrants must be suppressed because (1) the officers did

not have valid justification to initiate a traffic stop on October 8, 2008, and

---

[5] Officer Procopec's testimony did not overlap with Agent Hunt's testimony such that
the court does not cite it as corroborating Agent Hunt's testimony.

(2) Agent Hunt unreasonably searched Defendant's backpack.[6]  Based on the
following, the court rejects each of these arguments.

### 1.      The Officers' Stop of the Vehicle

        *Whren v. United States*, 517 U.S. 806, 810 (1996), determined that
"the decision to stop an automobile is reasonable where the police have probable
cause to believe that a traffic violation has occurred."   This probable cause
standard is an objective standard -- "[s]ubjective intentions play no role in
ordinary, probable-cause Fourth Amendment analysis."  *Id.* at 813; *see also United
States v. Willis,* 431 F.3d 709, 715 (9th Cir. 2005) ("*Whren* stands for the
proposition that if the officers have probable cause to believe that a traffic violation
occurred, the officers may conduct a traffic stop even if the stop serves some other
purpose.").  Accordingly, a traffic violation is "sufficient to justify an investigatory
stop, regardless of whether (i) the violation was merely pretextual, (ii) the stop
departed from the regular practice of a particular precinct, or (iii) the violation was
common and insignificant."  *United States v. Choudhry*, 461 F.3d 1097, 1102 (9th
Cir. 2006) (citations to *Whren* omitted).

        Officer Buyten testified that he pulled over the truck in which
Defendant was a passenger because the tail lamps of the truck were partially

---

[6] During the hearing, Defendant's counsel conceded that this was the scope of what he
was seeking to suppress.

obscured by dark-tinted covers over the taillight apparatus resulting in only the tail

lamps' upper red reflector and half of the lower red reflector being visible.  *See*

Pl.'s Ex. 3.  Due to these tinted covers on the taillight apparatus, Officer Buyten

observed that it was difficult to see the brake lights in daylight from a close

distance.  Officer Buyten further testified that he believed that these covers

restricted the taillights' visibility such that the taillights violated HCTC § 24-37,

which requires vehicles to be equipped with two taillights that emit a "red light

plainly visible from a distance of one thousand feet to the rear."  Given that the

truck's taillights were indeed partially obscured, *see* Pl.'s Ex. 3, Officer Buyten

had probable cause to believe that the truck violated HCTC § 24-37 and therefore

was justified in stopping the truck.[7]

---

[7]  The court recognizes that Officer Procopec, who issued the ticket, incorrectly cited HRS § 291-3, which was repealed in 1971.  That Officer Procopec ultimately cited the incorrect statute in the citation, however, is irrelevant to the determination of whether the officers had probable cause to stop the truck.  Agent Hunt and Officer Buyten stopped the truck based on Officer Buyten's observation that the truck did not comply with HCTC § 24-37, and requested that Officer Procopec assist with the traffic stop because, among other reasons, Officer Buyten did not have his citation book.  Accordingly, it was Officer Buyten's observation that the truck did not comply with HCTC § 24-37 that provided the objective reason to make the traffic stop.  *See Davenpeck v. Alford*, 543 U.S. 146, 153 (2004) (rejecting Ninth Circuit's holding that the probable-cause inquiry is "confined to the known facts bearing upon the offense actually invoked at the time of arrest, and that (in addition) the offense supported by these known facts must be 'closely related' to the offense that the officer invoked"); *United States v. Brookhardt*, 277 F.3d 558, 565 (9th Cir. 2002) (agreeing with other circuits that have concluded "that, even if probable cause does not support arrest for the offense charged by the arresting officer, an arrest (and search incident thereto) is nonetheless valid if the same officer had probable cause to arrest the defendant for another offense").  Further, to the extent that Officer Procopec's misciting of the law supports any inference that the officers used the defective taillights as a pretext to stop

(continued...)

At the hearing, Defendant argued that the truck did not violate HCTC § 24-37 because HCTC § 24-37(a) requires that vehicles be equipped with only one taillight and the truck had an unobstructed taillight at the rear center of its cab. This argument is meritless because HCTC § 24-37(b) states that vehicles "other than a truck tractor, shall be equipped with at least *two* tail lamps mounted on the rear, . . . which, when lighted as required, shall comply with the provisions of this section." (emphasis added). Accordingly, even including the taillight at the rear center of the cab, Officer Buyten still had probable cause to believe that the truck did not comply with HCTC § 24-37's requirement that the truck be equipped with two taillights that emit a red light plainly visible from a distance of one thousand feet to the rear. The court therefore finds that the officers were justified in stopping the truck.

### 2. *The Search of the Backpack*

A warrantless search and seizure of abandoned property does not violate the Fourth Amendment because "persons who voluntarily abandon property lack standing to complain of its search or seizure." *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986) (citation omitted). Determining abandonment is a

---

[7](...continued)
the truck, such pretext does not violate any Fourth Amendment rights. *See Wren v. United States*, 517 U.S. 806, 813 (1996).

14

question of intent, requiring the court to "focus on whether, through words, acts or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the search or seizure." *Id.*  The court must make the abandonment determination based on the totality of the circumstances, with two important factors being the denial of ownership and physical relinquishment of the property. *Id.*

The totality of the circumstances indicate that Defendant abandoned the backpack.  After the truck was stopped, Officer Buyten approached Defendant, who was in the front passenger seat with a backpack by his feet and asked him to exit the vehicle.  Officer Buyten then asked Defendant who the backpack belonged to, and in response Defendant indicated Ramirez-Guerra.  Next, Agent Hunt approached Defendant, and similarly asked Defendant if he owned the backpack. Defendant responded "no," and again stated that it belonged to Ramirez-Guerra while pointing to him.  By disclaiming to both Officer Buyten and Agent Hunt that the backpack belonged to him, Defendant gave up any expectation of privacy he may have had in it. *See United States v. Decoud*, 456 F.3d 996, 1007-08 (9th Cir. 2006).

In opposition, Defendant argues that there was no abandonment because he did not relinquish control of the backpack but was instead separated

from it when the officers ordered him out of the truck.  The court recognizes that

physical relinquishment is an important factor and may on its own be dispositive of

the abandonment inquiry.  *See, e.g.*, *United States v. Lewis*, 2009 WL 1856643, at

*6 (D. Ariz. June 29, 2009) (finding that defendant who fled from vehicle

manifested intention to abandon vehicle); *United States v. Tuua*, 2008 WL

2485418, at *6 (D. Haw. June 19, 2008) (finding abandonment where defendant

threw bag into a stream and maintained no control over it); *United States v. Miller*,

2006 WL 3725555, at *1 (D. Nev. Dec. 15, 2006) (finding abandonment when

Defendant tossed the bag out of a motel room and into a public area).  Physical

relinquishment is not, however, a *necessary* factor for finding an abandonment,

especially where the defendant has unequivocally disclaimed ownership.  *See*

*Decoud*, 456 F.3d at 1007 (finding that defendant had no expectation of privacy for

a briefcase where he claimed that it belonged to the owner of the vehicle and that

he did not even know how to open it); *United States v. Leunen*, 2008 WL 5210852,

at *4 (D. Ariz. Nov. 17, 2008) (stating that "words alone which disclaim ownership

in property can be sufficient to demonstrate abandonment").  Thus, even though

Defendant did not physically relinquish the backpack, his unequivocal statements

to Agent Hunt and Officer Buyten adequately support that Defendant abandoned

the backpack.

16

Defendant also argues that Defendant did not abandon the backpack because all of the other circumstances known to the officers -- *i.e.*, they saw Defendant with the backpack, it was located where Defendant was sitting in the truck, and Ramirez-Guerra and Osieda told the officers it belonged to Defendant -- indicated that the officers knew that the backpack belonged to Defendant.  *See* Def.'s Mot. 20-21; Def.'s Reply 9-10.  Defendant misconstrues the abandonment inquiry -- the relevant analysis is not whether the officers believed the backpack belonged to Defendant, but rather whether Defendant abandoned the property such that he relinquished a reasonable expectation of privacy in it.[8]  Based on the circumstances, the court concludes that Defendant did indeed abandon the backpack and has no standing to complain of its search and seizure.

///

///

///

///

///

---

[8]  Defendant cites to *United States v. Fulani*, 368 F.3d 351 (3d Cir. 2004), as requiring that the government prove Defendant's intent to abandon the property at issue by clear and convincing evidence.  *See* Def.'s Reply 10.  Even if the Ninth Circuit were to adopt such heightened standard, Defendant manifested his intent to abandon the backpack in a clear and unequivocal way by *twice* disclaiming ownership of the backpack and stating that it belonged to Ramirez-Guerra.

## CONCLUSION

Based on the above, the court DENIES Defendant's Motion to Suppress.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 17, 2009.



    /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Hinsey*, Cr. No. 08-00625 JMS, Order Denying Defendant's Motion to Suppress